278 P.2d 561

Robert M. MARR, Plaintiff-Appellee,

v.

Eugene NAGEL, Defendant-Appellant,
Cross-Appellee,

Frank Cohn, Defendant-Appellee.

Joseph L. TAPIA, Administrator of the Es-
tate of John N. Tapia, Jr., deceased; and
the Estate of John N. Tapia, Jr., deceased,
Defendants, Cross-Claimants,

v.

NAGEL, and Cross-Appellants,

J. V. Russell and Opal Russell, his wife,
Intervenors, Cross-Appellants.

No. 5744.

Supreme Court of New Mexico.

Dec. 28, 1954.

Lorenzo A. Chavez, Benigno C. Hernandez, Jr., Albuquerque, for Robert M. Marr.

Iden & Johnson, Albuquerque, for Eugene Nagel.

Simms & Modrall, George T. Harris, Jr., Albuquerque, for Frank Cohn.

Vance Mauney, Albuquerque, for Joseph L. Tapia, administrator, and estate of John N. Tapia, Jr., deceased.

Joseph L. Smith, Arturo G. Ortega, Albuquerque, for intervenors Russell.

FRED J. FEDERICI, District Judge.

This case has heretofore been ruled upon by this Court on motions to dismiss and strike briefs in Marr v. Nagel, 58 N.M. 479, 272 P.2d 681, and in order not to unduly prolong this opinion reference is made to that case for a general statement of the facts.

In the instant case, which is the appeal proper, the first assignment of error is stated as follows:

"The Court erred in granting Frank Cohn's motion for judgment notwithstanding the verdict when the said defendant Frank Cohn failed to move for a directed verdict at the close of all the evidence."

Rule 50(b) of the District Court Rules of Civil Procedure provides as follows:

"(b) Reservation Of Decision On Motion. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed

to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned, such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict has been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict has been directed or may order a new trial."

A review of pertinent portions of the record becomes necessary. At the close of plaintiff Marr's and intervenors Russell's case in chief, defendant Cohn's counsel made the following motion:

"Mr. Harris: May it please your Honor, the Defendant Frank Cohn, at this time, Plaintiff and Intervenor having rested, respectfully moves that the Complaint in Intervention and the Plaintiff's Complaint be dismissed, as against the Defendant Frank Cohn, on the ground that Plaintiff and Intervenors have failed to establish any negligence an the part of this Defendant, as a matter of law, and further, that even though negligence might have been established in one or more respects, that as a matter of law, there is no causal connection between the negligence so established and the proximate—or the result of the accident. And that reasonable minds could not differ as to the fact that there was no negligence on the part of Mr. Cohn, which resulted in injuries to Mr. Marr, or to Mrs. Russell, the Intervenor.

"The Court: Any other motions?

"Mr. Mauney: No motions.

"The Court: I am going to reserve ruling on that."

It will be noted that the court reserved ruling on the motion at that time.

At the close of defendant Nagel's case, Cohn's counsel renewed the motion, and in this connection the transcript shows as follows:

"Mr. Harris: May we make, again, the motion made at the close of Plaintiff's case?

"The Court: Proceed."

Here again the court apparently acknowledged the motion but made no ruling threon and directed counsel to proceed, and counsel proceeded then to put on testimony on behalf of his client Cohn. After Cohn testified, and at the close of all of the evidence, the trial judge, after a five minute recess for the jury, during which the transcript does not fully disclose colloquy that may have occurred between court and counsel, the transcript shows as follows:

"The Court: I am going to overrule your motion, Mr. Harris,"

the ruling being directed to Mr. Harris as attorney for Cohn. It seems quite obvious from the record what motion was referred to by the court, for no other pertinent motions were made by counsel for Cohn. Thereafter the jury returned a verdict against Cohn, whereupon Cohn's attorney timely filed a written motion for judgment notwithstanding verdict, or in the alternative for an order granting a new trial. The trial court granted that portion of Cohn's motion seeking a judgment notwithstanding verdict, and entered a written order entitled "Order for Judgment of Dismissal of Defendant Frank Cohn Notwithstanding Special Verdict," in which order appear the following pertinent recitals:

"the Defendant Frank Cohn having moved the Court for a directed verdict at the close of Plaintiff's case, and *having renewed said motion at the close of the entire case after each of the Defendants had rested,* the Court having then and there overruled said motion; and the jury having returned its special verdict in favor of the Plaintiff and Intervenor Opal Russell and against the Defendant Frank Cohn, and, thereafter, Defendant Frank Cohn having duly moved for a judgment notwithstanding the verdict or, in the alternative, for an order granting a new trial upon the grounds stated in said motion on file herein, and the Court having heard the arguments of counsel on said motion and being fully advised in the premises, having found that Defendant Frank Cohn was and is entitled to a judgment notwithstanding the verdict, it is hereby Ordered, etc." (Emphasis ours.)

Not only does the record indicate that the court advised counsel for Cohn at the close of all the evidence that he was overruling his motion, but the recitals in the order set out above unequivocally state that the motion made at the close of plaintiff's case was renewed at the close of the entire case; consequently, if the law is (as contended by several parties in this court and which we do not have to here decide) that under Rule 50(b) supra, a motion for judgment notwithstanding verdict cannot be urged unless the movant had previously moved for dismissal or for directed verdict at the close of all the evidence and before

submission to the jury, then the objection urged in this court has been met, for we find fairly from the reporter's transcript, and from the dignity of the recitals in the order entered by the court on the matter that the motion for dismissal or directed verdict was renewed, and in any event ruled upon by the court adversely to the movant, at the close of all of the evidence. Following the verdict of the jury, the trial court granted the motion for judgment notwithstanding verdict within his authority so to do in contemplation of the provisions of Rule 50(b) supra, declaring that when a motion for a directed verdict is made at the close of all of the evidence and is denied, or for any reason is not granted, the trial court may determine the legal questions raised by the motion after submission of the action to the jury.

The aforesaid first assignment of error is therefore not well taken.

The second assignment of error is set out in the following language:

"The Court erred in granting defendant Frank Cohn's motion for judgment notwithstanding the verdict for the reason that there was evidence and inference from which the jury could arrive at its verdict."

The trial judge in granting the motion for judgment notwithstanding verdict apparently concluded as a matter of law that either the defendant Cohn was not negligent or that if he was negligent in overtaking and passing the Marr car that this negligence, if any, was not the proximate cause or a contributing proximate cause of the personal injuries sustained by plaintiff Marr and his passenger, intervenor Russell, as a result of the Marr car being struck by the Nagel truck. Further, in sustaining the motion for judgment notwithstanding verdict, the trial judge apparently also concluded as a matter of law that regardless of Cohn's actions in the driving of his car at the time of these collisions that there was no duty on his part to foresee that the Nagel truck was going to collide with the Tapia car up ahead of him, resulting in the Cohn car being subsequently side-swiped by the free-wheeling dual wheels of the Nagel truck, to be still followed by a careening of the Nagel truck on to the Marr car which was behind the Cohn car.

The trial judge was apparently much disturbed on this phase of the case as early as at the close of plaintiff Marr's and intervenor Russell's case, at which time counsel for defendant Cohn moved the court for a dismissal as to him. That the court was disturbed is borne out by the comments of the trial judge which follow:

"The Court: Yes, sir, asked Mr. Marr, I didn't see a thing. I am more accurate than I appear to be, up here. *I watched each party, what they have proved, and what they haven't, and*

*each Defendant.* It is no reflection on you, on the thing, except that it was the first established theory. There was some evidence, this morning, about some repeated sharp passing, beforehand, but I don't even think that was permissible. *I don't care what he did before the site of the accident. He passed, all right, he passed around the car, without any danger.* He—if he cut in, I don't know how he did, but *he wasn't involved in any physical contact,* which isn't a prerequisite, however, for liability. He can have liability without any physical contact. That happening an eighth of a mile away, according to Imershein, whether he is right or not, I don't know, from the point of impact, happening so soon prior to the impact, I am inclined to think Mr. Marr or anybody else that was reasonable, would put on their brakes and stop. *Naturally, Mr. Cohn would have swung over, precipitously or otherwise, if he saw an impending collision up ahead of him. He would have been foolish not to, from the evidence thus far.* I think I ought to reserve it. I want to see what the evidence is. Bring in the jury." (Emphasis ours.)

The trial judge was hesitant, but concluded he would hear more evidence. At the close of all of the evidence the transcript does not disclose what the Judge's remarks or feelings may have been, for all the transcript shows is a period of recess, but in any event he finally told counsel for Cohn he was going to overrule his motion, obviously talking about Cohn's motion to dismiss. The trial judge, no doubt having in mind Rule 50(b) hereinabove set out which may permit bad practice but does none the less permit a trial judge to overrule or deny a motion for dismissal or for a directed verdict at the close of all of the evidence and reserve ruling thereon until after the jury is given an opportunity to pass on the identical situation from a factual standpoint, submitted the matter to the jury. Sometimes trial judges, including this writer, being perplexed, and yet having tentative views about a given situation, will permit a lay jury to consider a matter, perhaps in the hope that the jury will see things from a factual viewpoint in the same light as seen by the trial judge from a legal viewpoint, or at least as seen by him from a mixed legal and factual viewpoint. In the instant case the jury, by its verdict, obviously did not bolster the trial judge's original tentative views, but on the contrary, by the motion for judgment notwithstanding the verdict he was called upon, once and for all, to determine whether as a matter of law he should permit the special verdict of the jury to stand against Cohn, or in effect whether a cause of action was ever legally established by the evidence against him. It is apparent that

the learned but perhaps disturbed trial judge, in conscience, could not and did not allow the special verdict against Cohn to stand, and not only set it aside but entered judgment in his favor. That is what we are called upon to review.

The transcript in this case consists of two large bound volumes of typewritten testimony in excess of 675 pages, and a review thereof has been difficult and tedious, and it does bear out a picture of the general facts as already briefly outlined in Marr v. Nagel, supra, heretofore reported. It is obvious that what the defendant Cohn did was, while driving southerly, to overtake the Marr car at a time when overtaking the car appeared to invite no danger, and that when he overtook that car and saw the approaching north-bound Nagel truck, he did the very natural thing of pulling back into his right lane of travel in front of the Marr car, just passed, and behind the Tapia car, which had been in the lead of the three south-bound cars. The comment made by the trial judge in this case at the close of the plaintiff's and intervenors' case becomes pertinent, when he said: "Naturally, Mr. Cohn would have swung over precipitously or otherwise, if he saw an impending collision up ahead of him. He would have been foolish not to, from the evidence thus far." Apparently subsequent evidence heard at the trial did not change the view as above stated by the trial judge,

for he granted the motion for judgment notwithstanding verdict.

An examination of the entire record indicates that these series of collisions resulted from the initial negligence of the driver of the north-bound Nagel truck side-swiping the lead south-bound Tapia car (there being also evidence that the truck driver had been doing a little drinking of intoxicants), which Nagel truck was apparently over on the wrong lane of traffic, for the testimony shows that the front wheels of the Nagel truck made a moon shaped skid mark approximately seven inches west of the center line of the highway at the moment of the first impact over on the Tapia car's lane of traffic. The point of impact of this first collision was between the left portion of the Tapia car at about the window level and the left corner of the bed of the truck, and apparently this impact also tore loose the left rear dual wheels and drive shaft of the truck, so that the dual wheels and drive shaft were "free wheeling" causing the driver of the Nagel truck to have difficulty keeping the truck in his lane of the highway and under control. After the first collision the Nagel truck continued northerly and the second collision apparently occurred between the "free wheeling" left dual wheels and drive shaft of the truck and the left rear fender on the Cohn car, over on Cohn's side of the road. Following

this the Cohn car crashed into the rear of the Tapia car, the front of which was imbedded in the east railing of the bridge following the impact with the Nagel truck. Immediately following the second collision the Nagel truck looped on the highway and crashed into the front end of the Marr car, which Marr car was at that time almost completely stopped in its proper lane of the highway, and it was in the Marr car that plaintiff Marr and his passenger, intervenor Opal Russell, sustained the physical injuries for which they brought suit against defendants Nagel and Cohn.

At any rate from the maze of testimony involved, the foregoing seems to be the best picture this writer can elicit from the record of what transpired. In concluding this point we cannot say, from the evidence as disclosed from the record, that the trial court erred as a matter of law in granting defendant Cohn's motion for judgment notwithstanding verdict.

The conclusion thus reached is based in part on the following reasons, if it be necessary that reasons be given:

Reading the testimony in the light most advantageous to the plaintiff, and giving him the benefit of every inference of fact fairly deducible therefrom within the meaning of Michelson v. House, 54 N.M. 197, 218 P.2d 861, and Miera v. George, 55 N.M. 535, 237 P.2d 102, it is our opinion that the plaintiffs and cross defendants were not entitled as a matter of law to a judgment against the defendant Cohn in that:

1) Even if it be assumed for the purpose of this decision that there may have been some negligence on the part of Cohn in passing the Marr car at the time he did and pulling in between the Marr car and the Tapia car when the Nagel truck appeared on the scene, even if this be construed as in and of itself a negligent act on the part of Cohn, it is highly speculative, to say the least, that any such negligence was either the proximate cause or a contributing proximate cause of the personal injuries sustained by Marr and his passenger, intervenor Russell, because as elsewhere stated in this opinion the cause of all of these collisions was driver Nagel's original negligence in striking the Tapia car up ahead of the Cohn car on the Tapia side of the road.

2) The driver of the Cohn car could in no way anticipate or foresee the possibility of the Nagel truck striking the Tapia car up ahead of him, nor its subsequent careening forward and striking the Cohn car and finally the Marr car behind him.

3) It was the driver of the Nagel truck's original negligence that set in motion the chain of events which resulted in the Marr car being ultimately struck.

4) Nothing that the driver of the Cohn car did set in motion any chain of events

which resulted in the Nagel truck hitting the Tapia car up ahead or ultimately striking the Marr car behind him. There is no evidence in the record, or at least none has been called to our attention, which would indicate that when Cohn passed the Marr car his lights blinded the driver of the Nagel truck, causing the driver of the Nagel truck to lose control of his truck and strike the Tapia car.

5) All Cohn did was pass the Marr car successfully and pull in ahead of the Marr car and behind the Tapia car successfully, and was over on his side of the lane when the Nagel truck struck the Tapia car up ahead.

6) At most, through the instinct of self-preservation Cohn pulled over on his right lane of the road after successfully passing the Marr car when he saw the Nagel truck approaching and the possibility of the accident up ahead of him. The old Squib case that we all read about in Torts in Law School years ago disposes of that phase of the case.

7) Furthermore, from the way the accident finally happened, even if Cohn had not overtaken Marr, the Marr car would probably have been hit by the Nagel truck anyhow. It just happened that the Marr car was at the wrong place at the wrong time, and we do not see where Cohn should be penalized merely because the free wheeling duals of the Nagel truck sideswiped the Cohn car and then went on and hit the Marr car behind him. At the time the Cohn car was struck by the Nagel truck, Cohn was over on his side of the road where he belonged, and, of course, so was Marr.

8) If the driver of the Cohn car is to be held responsible, then we are penalizing one who instinctively managed successfully to avoid a collision which might have been serious so far as he was concerned, and place on him liability for circumstances that arose beyond his control, namely the original striking of the Tapia car up ahead by the Nagel truck.

9) Even if the drivers of both the Nagel truck and the Tapia car were negligent in connection with the first collision, the situation does not change so far as Cohn's liability is concerned.

The ruling of the trial court in granting judgment notwithstanding verdict is hereby sustained.

■ The third assignment of error, raised only by intervenor appellee and cross-appellant, J. V. Russell, is stated as follows:

"The Court erred in denying intervenor J. V. Russell's motion for a new trial and in entering judgment ordering, adjudging and decreeing that he have nothing against the defendants."

The question involves special interrogatory

No. 9 submitted to the jury, and the jury's answer thereto, as follows:

"9. If you find any or all of the defendants negligent in the collision involving the Marr car and the Nagel truck, and that such negligence on the part of each Defendant was either the proximate cause or a contributing proximate cause to the collision between the Nagel and Marr vehicles, specify the damages proximately suffered by each of the following parties:

"Robert M. Marr: $10,000.00
"Opal Russell: $ 2,000.00
"J. V. Russell: $ None"

In the lower court, J. V. Russell and Opal Russell, his wife, filed a complaint in intervention, and on the first cause of action the jury allowed Opal Russell $2,000 damages, apparently for physical injuries sustained by her, and for pain, mental anguish, medical and hospital expenses, etc. In the second cause of action of the complaint in intervention, which is the basis of the present point, intervenor J. V. Russell alone sued for damages on the grounds of having been deprived of the services of his wife, Opal Russell, as a result of physical injuries sustained by her while a passenger in the Marr automobile. The evidence disclosed that she suffered some injury to the use of her arm and shoulder, and that she was only able to do light housework, was nervous, etc. At any rate,

under special interrogatory No. 9, as above set out, the jury entered the word "none" following the interrogatory insofar as it applied to J. V. Russell on his said claim.

The interrogatories submitted to the jury in the lower court do not display the best draftsmanship in the world, and particularly with reference to the language of the interrogatory No. 9. To start out with, all three claims of Marr, Opal Russell, and J. V. Russell are combined together in the same interrogatory in such a way as to have made it difficult for a jury to have made it absolutely plain what was intended by their special verdict. It does appear from the interrogatories as a whole that the jury did find negligence on the part of the defendants insofar as the collision involving the Marr car and the Nagel truck are concerned, and Opal Russell was a passenger in the Marr car. Having answered that interrogatory in the affirmative, then the jury was merely asked to assess damages, if any, in favor of Marr, Opal Russell, or J. V. Russell. They awarded damages to Marr and Opal Russell, but wrote in the word "none" following the name of J. V. Russell.

Nowhere by the form of interrogatories was the jury asked whether all the issues were found in favor of the intervenor J. V. Russell and against the defendants, on his claim for deprivation of the services of his wife in intervenor's second cause of

action. Neither did the interrogatories provide that the jury could specifically find such issue or issues in favor of the defendants and against the intervenor J. V. Russell. The whole set of issues was apparently all bunched in together. However, it is not quite plain from the interrogatories as a whole just what the jury intended to do as to the J. V. Russell second cause of action. The whole situation is highly speculative to say the least, and the answers to the interrogatories do not clearly point out whether the jury intended to find for the intervenor and cross-complainant J. V. Russell on his second cause of action, or whether the jury intended to find for the defendant or defendants. Even if the interrogatories and answers thereto be construed as a finding of the issues in favor of the intervenor J. V. Russell on his second cause of action, and even if under such a situation the jury may have thought that the resulting damages were inconsequential in dollars and cents, even so it would seem to make no difference as to the conclusion we must reach in view of the authorities hereinafter cited.

Section 21–8–25, New Mexico Statutes 1953 Annotated (formerly § 19–825, 1941 Comp.) provides as follows:

"When a verdict is found for the plaintiff in an action for the recovery of money, or for the defendant when a 'set-off' for the recovery of money is established beyond the amount of the plaintiff's claim as established, the jury must also assess the amount of the recovery; * * *."

In the case of Klein v. Miller, 159 Or. 27, 77 P.2d 1103, 1104, 116 A.L.R. 820, 822, the jury found for the plaintiff and assessed damages as "no damages." The court had before it an Oregon statute, Code 1930, § 2–405, providing as follows:

" 'When a verdict is found for the plaintiff in an action for recovery of money, or for the defendant when a counterclaim for the recovery of money is established beyond the amount of the plaintiff's claim as established, the jury shall also assess the amount of recovery.' "

The Oregon court held as follows:

"A verdict which does not conform to this statute, confers no authority to render a judgment upon it. Goyne v. Tracy, 94 Or. 216, 185 P. 584.

"In the case at bar the verdict is not for the defendant. Its assessment of 'no damages' nullifies its effect as a verdict in favor of plaintiff. Being neither a verdict in favor of plaintiff nor a verdict in favor of defendant, it is in effect no verdict at all."

In an earlier Oregon case, McLean v. Sanders, 139 Or. 144, 7 P.2d 981, we quote as follows:

"A verdict in the instant case found for the plaintiff but failed to assess the amount of her recovery, expressly stating that she had suffered no damage. *The gist of an action* for false imprisonment *is damage.* Unless there was damage, the action cannot be maintained. *The verdict as rendered is neither for the plaintiff nor for the defendants.* If the jury had found that plaintiff had sustained nominal damages, only that would have been sufficient, but having found, in effect, as the verdict shows, that the imprisonment was unlawful, it was bound, under the statute, to find that the plaintiff had suffered at least nominal damages.

\* \* \* \* \* \*

"It is impossible to ascertain from this verdict whether the jury intended to find for the plaintiff or for the defendants. Because of its uncertainty in this respect, it is not sufficient to support a valid judgment. *\* \* \* When the verdict was returned in that form, it was the duty of the court to point out this defect to the jury and send it back with directions either to assess the damages or else return a verdict for defendants.* Since the court failed to perform that duty and the jury has been discharged, the judgment must be reversed. The case, therefore, will be remanded to the court below for such further proceedings as are not inconsistent herewith." (Emphasis ours.)

In Ridenour v. Lile, 93 Ohio App. 435, 114 N.E.2d 166, 169, the Ohio court had before it an Ohio statute, Gen.Code, § 11420–19, providing in part as follows:

" 'When by the verdict either party is entitled to recover \* \* \* from the adverse party, the jury must assess the amount of the recovery in its verdict.' "

The verdict of the jury read as follows, in said case:

" 'We, the jury, being duly impaneled and sworn, *find* upon *the issues* joined between the plaintiff and defendant upon the matters set out in the plaintiff's petition, *in favor of the defendant.*

" 'We *further find* upon the issues joined between the defendant and the plaintiff upon the matters set up in the defendant's answer and cross-petition, in favor of the defendant, and that there is due to the defendant from the plaintiff the said E. M. Ridenour, the sum of *no dollars.' "* (Emphasis ours.)

The Ohio court held as follows:

"In the present case, upon the return of the verdict *the trial court erred in accepting same.* It was the duty of the trial court to point out this defect to the jury and send it back with instructions either to assess the damages recoverable by defendant from plaintiff

or else return a verdict finding a certain definite sum due plaintiff from defendant on plaintiff's petition, a certain definite sum due defendant from plaintiff on defendant's cross-petition, strike a balance and make a finding of a definite sum in dollars and cents due either plaintiff or defendant, as the computation showed.

"This error rendered the *entire verdict* invalid *both as to the issues raised by the petition and the answer thereto and as to the issues raised by the cross-petition and the reply.*" (Emphasis ours.)

In view of the provisions of our statute, supra, and in view of the authorities heretofore cited, the court erred in not granting intervenor cross-complainant J. V. Russell his motion for a new trial.

In view of the foregoing it is the opinion of this court that as to assignments of error 1 and 2 the lower court is affirmed. As to assignment of error No. 3 the cause is reversed and remanded to the District Court with instructions to grant the intervenor cross-complainant J. V. Russell a new trial on all issues on his second cause of action, and it is so ordered.

McGHEE, C. J., and SADLER, COMPTON and LUJAN, JJ., concur.

KIKER, J., not participating.