No. 97-395

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 202N

PATRICIA L. LaCOMBE, individually and as

Guardian ad Litem of LaTOYA MORENO, a minor,

Plaintiffs and Appellants,

v.

EMMETT T. MURPHY,

Defendant, Counterclaimant,

and Respondent.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert C. Kelleher, Sr., Attorney at Law, Butte, Montana

For Respondent:

Gary L. Walton; Poore, Roth & Robinson, Butte, Montana

Submitted on Briefs: July 23, 1998

Decided: August 24, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2 Patricia L. LaCombe (LaCombe), individually and as guardian ad litem of LaToya Moreno (Moreno), appeals from the deemed denial by the Second Judicial District Court, Silver Bow County, of her motion for a new trial. We affirm.**

**¶3 We restate the issues on appeal as follows:**

**¶4 1. Are the jury's findings inconsistent?**

**¶5 2. Do the jury's findings constitute an improper finding of unavoidable accident?**

**¶6 3. Did the District Court abuse its discretion when it quashed the subpoena *duces tecum* served on, and excluded any evidence from the files of, the Montana Board of Medical Examiners?**

**¶7 LaCombe and Moreno, her minor daughter, were involved in a traffic accident**

with Emmett T. Murphy (Murphy) in Butte, Montana, on September 2, 1995. LaCombe was driving her vehicle and Moreno was a passenger in the front seat. LaCombe drove her vehicle into the intersection of Park and Arizona Streets, where it collided with Murphy's vehicle. LaCombe claimed that the traffic light controlling the intersection in the direction she was traveling was green when her vehicle entered the intersection. Murphy claimed that he stopped at the red light controlling his direction of travel and, when the light turned green, he proceeded into the intersection and collided with LaCombe's vehicle.

¶8 LaCombe subsequently filed a negligence action against Murphy on behalf of herself and Moreno, seeking to recover damages for injuries allegedly sustained by both as a result of Murphy's negligence. She also sought recovery for damage to her vehicle. Murphy counterclaimed, alleging that LaCombe was negligent and caused him injuries. He, too, sought recovery for damage to his vehicle.

¶9 The case was tried to a jury. In addition to testimony from the parties involved in the accident, the jury heard conflicting opinion evidence from accident reconstruction experts for both LaCombe and Murphy, as well as testimony by a witness to the accident who stated that Murphy had a red light controlling his direction of travel and that LaCombe's light was green. Her deposition testimony that LaCombe's traffic light was red was pointed out to the jury.

¶10 The case was submitted to the jury on a special verdict form to which neither party objected. After deliberations, the jury found--in response to the first question on the special verdict form--that Murphy was not negligent. The jury did not answer the third special verdict question--which inquired about LaCombe's negligence-- because the special verdict form directed it to proceed to the seventh question if it answered "no" to the first. The jury found--in response to the seventh question--that LaCombe's negligence was not a cause of Murphy's injuries.

¶11 LaCombe timely filed a motion for a new trial which subsequently was deemed denied by operation of Rule 59(d), M.R.Civ.P. This appeal followed.

¶12 1. Are the jury's findings inconsistent?

¶13 LaCombe's primary argument on appeal is that the District Court erred in denying her motion for a new trial because the jury's findings that Murphy was not

negligent and that she did not cause Murphy's injuries were "no verdicts" or inconsistent verdicts. LaCombe does not separately challenge the sufficiency of the evidence to support the jury's finding that Murphy was not negligent. The decision to grant or deny a new trial is within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of that discretion. *Jim's Excavating Service v. HKM Assoc.* (1994), 265 Mont. 494, 512, 878 P.2d 248, 259 (citation omitted).

¶14 LaCombe relies first on *Klein v. Miller* (Ore. 1938), 77 P.2d 1103, 1104, for the proposition that a verdict which is not in favor of either the plaintiff or the defendant "is in effect no verdict at all." From this premise, she apparently contends that where no verdict results, a party is entitled to a new trial. Aside from whether *Klein* remains good law even in Oregon, since it was later overruled and then the case overruling it was itself overruled in part, *Klein* has no application to the present case.

¶15 There, the jury found for the plaintiff in a negligence case, but awarded no damages. The statute at issue required a jury finding for the plaintiff in an action for recovery of money to also assess the amount of recovery. *Klein,* 77 P.2d at 1104. The Oregon Supreme Court determined that the verdict did not conform to the statute and, therefore, could not serve as the basis for a judgment. *Klein,* 77 P.2d at 1104. The court also clarified that, having found for the plaintiff, the jury's award of no damages was not a verdict in favor of the defendant; rather, the failure to assess damages merely nullified the effect of the verdict as being in the plaintiff's favor. *Klein,* 77 P.2d at 1104. As a result, the verdict was, in effect, no verdict at all and a new trial was required. *Klein*, 77 P.2d at 1104.

¶16 Here, the jury did not find for LaCombe. Indeed, it expressly found to the contrary, that Murphy was not negligent. Therefore, the jury would not have been required to assess damages even under the Oregon statute at issue in *Klein.* Nor was there any nullification of any part of the jury's verdict here by some other part of the verdict. Thus, *Klein* is distinguishable from the present case.

¶17 Moreover, Rule 49(b), M.R.Civ.P., does not provide support for LaCombe's argument that the jury's findings were inconsistent. In the first place, the verdict form provided to the jury was a special verdict under Rule 49(a), M.R.Civ.P. The District Court did not submit a general verdict together with written interrogatories as described in Rule 49(b), M.R.Civ.P. In any event, however, the "principles on inconsistency" contained in Rule 49(b) are not applicable here, LaCombe's

contention to the contrary notwithstanding. Rule 49(b) merely directs that, when the answers to written interrogatories are inconsistent with each other and one or more is inconsistent with the general verdict, the trial court may either return the jury for further consideration of its answers and verdict or may order a new trial. LaCombe argues in this regard that the jury was required to find either LaCombe or Murphy negligent and its failure to do so resulted in inconsistent verdicts. No authority is cited for either of these propositions, however, as is required under Rule 23(a)(4), M. R.App.P. Thus, we decline to address this argument further.

¶18 LaCombe also cites to *Marr v. Nagel* (N.Mex. 1954), 278 P.2d 561, but that case, like *Klein*, is distinguishable. There, a jury awarded damages to a passenger injured in an automobile accident but denied any recovery to her husband on his loss of services claim. *Marr*, 278 P.2d at 567. The trial court denied the husband's motion for a new trial and the New Mexico Supreme Court reversed, relying in part on *Klein*. *Marr*, 278 P.2d at 567-69. The present case, however, does not involve a finding of liability as to Murphy with regard to one plaintiff but not as to another plaintiff. Here, the jury found no negligence on Murphy's part.

¶19 LaCombe further cites to 76 Am.Jur.2d, Trial, § 1196, for the proposition that no judgment can be entered on findings which are contradictory as to material facts. LaCombe ignores an earlier portion of that section, however, which requires that, where several findings are made, they must be viewed in a manner as to make them consistent if at all possible. Here, it is likely the jury found that Murphy was not negligent, implicitly found that LaCombe was negligent and found that LaCombe's negligence did not cause injury to Murphy. The jury's failure to expressly answer the third special verdict question, which inquired directly about LaCombe's negligence, resulted from the instructions set forth in the special verdict form. That failure does not render the findings actually made inconsistent where, as here, there is a reasonable way to read the jury's answers to the special verdict questions as consistent.

¶20 We conclude that LaCombe has not established that the jury's findings in this case are inconsistent.

¶21 2. Do the jury's findings constitute an improper finding of unavoidable accident?

¶22 Relying solely on *Graham v. Rolandson* (1967), 150 Mont. 270, 435 P.2d 263,

LaCombe contends that the jury's findings that neither she nor Murphy was negligent constitute an improper finding of "unavoidable accident" which entitles her to a new trial. *Graham* does not support her position.

¶23 In *Graham,* we held that "the giving of an instruction on 'unavoidable accident' in any negligence case is error." *Graham,* 150 Mont. at 290, 435 P.2d at 274. No such instruction was given in the present case and, therefore, *Graham* is inapplicable here. LaCombe makes no other arguments relating to this issue.

¶24 We conclude that LaCombe has not established that the jury's findings constituted an improper finding of unavoidable accident.

¶25 3. Did the District Court abuse its discretion when it quashed the subpoena *duces tecum* served on, and excluded any evidence from the files of, the Montana Board of Medical Examiners?

¶26 LaCombe notified Murphy on the day prior to trial that she had served a subpoena *duces tecum* on the executive secretary of the Montana Board of Medical Examiners (Board) commanding her to appear for trial and bring copies of all the Board's records pertaining to Murphy, a medical doctor, "regarding any complaints, especially involving forgetfulness or inattention." Murphy moved for an order quashing the subpoena and an order *in limine* precluding any evidence that any complaint against Murphy had been filed with the Board on privacy, privilege and relevancy grounds. The District Court granted both motions, apparently on the basis that any evidence relating to Murphy's conduct of his medical practice was irrelevant to the issue of whether he negligently operated his vehicle on September 2, 1995. We review a trial court's evidentiary rulings to determine whether the court abused its discretion. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citation omitted).

¶27 LaCombe apparently sought to introduce information from the Board's files which might suggest that Murphy was a forgetful or absent minded physician. She argues on appeal that such evidence, assuming it existed, was character evidence admissible under Rule 404(c), M.R.Evid. The record reflects, however, that LaCombe did not offer the evidence under Rule 404(c), M.R.Evid. Indeed, LaCombe merely stated that the evidence was "relevant to prove that as we all get older we get more forgetful, more inattentive and have a tendency to day dream . . . ."

¶28 We will not address LaCombe's Rule 404(c) argument because it is raised for the first time on appeal. *See* Matter of R.B.O. (1996), 277 Mont. 272, 283, 921 P.2d 268, 274. Moreover, she advances no other arguments pursuant to which the excluded evidence would be relevant and admissible. We conclude, therefore, that the District Court did not abuse its discretion in quashing the subpoena *duces tecum* and excluding any evidence from the Board's files.

¶29 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

**Justice W. William Leaphart dissenting.**

¶30 I dissent. This suit involves a collision at an intersection which is controlled by traffic lights. Logic dictates that one party or the other had to have violated a red light. It was incumbent upon the jury to resolve the factual dispute. The special verdict form, however, was set up in such a fashion that the jury was in essence allowed to reach a non-verdict. In answering question number one, it found that Murphy was not negligent. Since the jury was then directed to not address question number three as to whether LaCombe was negligent, the result was a verdict that neither party was negligent. Although neither party objected to the form of the special verdict, that does not change the fact that, in the final analysis, the result is an internally inconsistent verdict, or a non-verdict. In the event of an inconsistent verdict, the matter must be retried. *Rudeck v. Wright* (1985), 218 Mont. 41, 47, 709 P.2d 621, 624-25.

¶31 Given that the special verdict form specifically asked whether LaCombe was negligent, and given that the jury did not answer that specific inquiry, this Court should not be concluding, based upon implication, that the jury in effect found that

**LaCombe was negligent.**

**/S/ W. WILLIAM LEAPHART**

**Justice Terry N. Trieweiler dissenting.**

¶32 I dissent from the majority opinion. I conclude that the jury's verdict was internally inconsistent and contrary to the law and, therefore, that the District Court abused its discretion when it denied the plaintiff's motion for a new trial.

¶33 The collision which was the subject of this litigation occurred in an intersection controlled by traffic signals. It could not have occurred unless one of the parties failed to stop for a red traffic signal. Failure to stop for a red traffic signal is a violation of the motor vehicle laws of this state. Section 61-8-207(3)(a), MCA. Violation of motor vehicle laws is negligence per se. *See Kudrna v. Comet Corp.* (1977), 175 Mont. 29, 572 P.2d 183. One or the other party to this litigation was, therefore, negligent as a matter of law.

¶34 While it is true that both parties denied entering the intersection while facing a red light, it was the jury's obligation to resolve the factual issue created by their denials. They did not do so. In spite of the majority's curious suggestion that the jury "implicitly found LaCombe was negligent," the fact is that the jury made no finding that either party was negligent. The jury cannot "implicitly" decide the ultimate issue in the case. It has to actually decide it. The jury cannot avoid its legal responsibility by deliberating for a few minutes and then returning a verdict which finds, in effect, that neither party violated the law.

¶35 Section 25-11-102(6), MCA, provides that a new trial may be granted when the jury's decision is against the law. In *Rudeck v. Wright* (1985), 218 Mont. 41, 46-47, 709 P.2d 621, 624-25, we held that the aggrieved party is entitled to a new trial where a jury's verdict is internally inconsistent. Both circumstances are present in this case. Therefore, the plaintiff was entitled to a new trial. Instead, she gets the latest result-driven contribution to appellate court lexicon known as the "implicit finding." The problem is that the verdict form provided for an actual finding, and none was made.

¶36 The jury's non-verdict should not have been surprising in light of the sentiments expressed by at least one member of the jury. During voir dire examination, that

member of the panel stated, in response to questions by plaintiff's attorney: "[I]f I was the plaintiff, I wouldn't want to have a person like me sitting on this jury feeling the way I do." That person was allowed to remain on the jury panel when the plaintiff's attorney used his peremptory challenges to remove other jurors who expressed negative feelings about the type of health care providers who treated the plaintiff.

¶37 That person then became the jury foreman who, after a few minutes of deliberation, signed the non-verdict in this case.

¶38 The result in this case is just the most recent example of a jury pool so poisoned by special interest propaganda and misinformation about the civil justice system that it simply refused to do its job. Under these circumstances, the product of its efforts should be thrown out and a new jury empaneled to resolve the relatively simple and straightforward factual issue that this case presents.

¶39 In the future, when jurors display the open bias and hostility to the civil justice system that was demonstrated by the person who became foreman of this jury, parties to litigation should not have to exercise a peremptory challenge to have that person removed from the jury panel. District judges should generously exercise their authority to remove jurors for cause when this type of attitude is demonstrated.

¶40 For these reasons, I dissent from the majority opinion. I would reverse the District Court's order which denied the plaintiff's motion for a new trial.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

/S/ WILLIAM E. HUNT, SR.