W. BLAIR HARRISON, Plaintiff in Error, v. GEORGE WILKERSON and VICIE WILKERSON, Defendants in Error.—405 S.W.(2d) 649.

Eastern Section. February 17, 1966.

Certiorari Denied by Supreme Court July 18, 1966.

Poore, Cox, Baker and McAuley, Knoxville, and Ben Simpson, Loudon, Robert A. Finley, Knoxville, of counsel, for plaintiff in error.

William E. Cooper and Walter, Gilbertson & Claiborne, Knoxville, for defendants in error.

McAMIS, P. J. Mrs. Vicie Wilkerson brought this action against Dr. Blair Harrison to recover for illness and damages growing out of the failure to remove a sponge within the incision following a Caesarean delivery performed by Dr. Harrison. Her husband brought a companion suit to recover for loss of services and medical expenses.

The two suits were tried together and resulted in a verdict for $25,000.00 in favor of Mrs. Wilkerson and $5,000.00 in favor of her husband. Dr. Harrison has appealed from judgments based upon the verdicts, insisting the Court erred in charging the jury in effect that defendant was guilty of negligence as a matter of law in not removing the sponge. It is also insisted the jury was guilty of misconduct in discussing whether defendant was protected by insurance and that the verdicts are excessive.

Defendant concedes that under the ''Captain of the Ship'' doctrine, Meadows v. Patterson, 21 Tenn.App. 283, 109 S.W.2d 417; Rural Educational Ass'n v. Bush, 42 Tenn.App. 34, 298 S.W.2d 761; French v. Fischer, 50 Tenn.App. 587, 362 S.W.2d 926, a surgeon in normal circumstances is held accountable under respondeat

superior for the negligence of assistants and nurses assisting in a surgical operation. He admits that in this case the sponge was not removed due to a mistake of the nurses in counting sponges. He insists, however, that exceptional circumstances may make the rule inapplicable and that in this case the necessity of attending to the emergency needs of the baby in an attempt to save its life might have been held by the jury to excuse him from liability. This insistence requires a statement of the proof in some detail.

Dr. Harrison knew that Mrs. Wilkerson had undergone a previous Caesarean delivery. In January, 1963, she came to him for care during another pregnancy. On July 9, 1963, she began to have premature labor pains and entered the hospital on defendant's advice. Because she had already had one Caesarian delivery within the recent past Dr. Harrison was apprehensive that she might have a rupture of the uterus unless the baby could be promptly removed. As a result preparations for the operation were made as quickly as possible but there is no insistence that proper assistance or preparations were lacking.

The operation was performed by defendant, assisted by Dr. Sam Harrison, a scrub nurse and a circulating nurse. The function of a scrub nurse is to operate within the sterile field, to hand the operating surgeon such instruments and supplies, including sponges, as he may call for. The circulating nurse is not required to have her hands and clothing sterilized. Her function is to perform such duties outside the sterile field as may be delegated by the operating surgeon.

After the baby had been delivered and Dr. Sam Harrison had assisted in stopping the flow of blood but before

the incision had been closed the baby which had been carried into an adjoining room began to have difficulty. The circulating nurse and Dr. Sam Harrison then left the operating room to attend to the baby. Dr. Harrison testified that his principal function of helping control bleeding was over and he "felt that it was safe for (him) to go and try to do something for the baby". Both the circulating nurse and Dr. Harrison later returned to the operating room. Dr. Harrison, however, took no further part in the operation and there is no proof that defendant requested any further assistance from him. After returning and before the incision was closed, the circulating nurse performed the customary and required duty of assisting the scrub nurse in counting sponges as a safeguard against leaving a sponge within the incision. In addition to the small sponges there were six large sponges, called lap sponges, in a prepared pack. All of the lap sponges were used during the operation. Due to a mistake of the two nurses in counting, one of these was left within the incision. There is proof that a board on which to hang sponges in the operating room enabled the doctor and nurses to further check the number of sponges removed.

The Court charged the jury that it was only to find whether the sponge was left within the incision and, if it should so find, the defendant would be guilty of negligence and "liable in this case." Since defendant admitted or did not deny in his special plea that the sponge, through a mistake of nurses, was not removed the charge of the court was tantamount to a peremptory instruction to return a verdict in some amount for each of the plaintiffs.

None of the cases cited go so far as to hold that the surgeon may not be excused for the act of himself or of an assistant when confronted with an emergency involving human life.

In Meadows v. Patterson, supra, the patient in some unexplained manner suffered an injury to his eye while unconscious. The principal factual question was whether the injury occurred during the time the patient was in the operating room or thereafter. If the injury occurred in the operating room it was held the surgeon would be liable for any negligence of the assisting nurses. There was no distraction of the doctor's attention or emergency involved.

In Rural Educational Association v. Bush, supra, the suit was against the hospital for leaving a sponge in the patient following an operation performed by a physician on its staff. A verdict against the hospital was sustained on a jury finding that the nurse who was employed by the hospital was negligent in counting sponges. The physician was not a party to the suit and no question of emergency was involved.

In the course of the opinion, the Court said:

"Professional or expert testimony was not necessary to establish that leaving the sponge in plaintiff's body was negligence. Any layman would know that fact."

In French v. Fischer, supra, the suit was against both the doctor and the hospital for negligent counting of sponges causing one of them to be left in the patient's body. Before trial the suit was dismissed as to the operating surgeon as the result of a covenant not to sue. The hospital appealed from a judgment based upon a jury verdict in favor of the patient. No question of emergency

or other extenuating circumstance was involved in that case except that the circulating nurse was sent out by the doctor to get collodion. She remained absent from the room trying to find it and for that reason was not present to check sponges with the scrub nurse whose count turned out to be incorrect. The opinion, under the ''Captain of the Ship'' doctrine, held the physician liable, quoting the language of the Rural Educational Association opinion above quoted.

■ The language of the opinion in Rural Educational Association v. Bush above quoted and other language used in that case, in our opinion, is to be taken only as holding that under the facts of that case the negligence of the defendant ''cannot be doubted'' and that expert testimony was not needed because ''any layman would know that fact.'' There is nothing in French v. Fischer to indicate an intention to give the opinion in Rural Educational Association v. Bush a broader meaning or adopt a rule of absolute liability no matter what the circumstances confronting the physician and his assistants. To so hold would put an operating surgeon and his assistants in a position making it difficult for them to exercise calm judgment and intelligent choice in adapting their actions to the exigencies of the situation confronting them. We do not mean to say that in the absence of some reasonable explanation the operating surgeon is not liable for the act of his assistants in leaving a sponge within the incision. The question of their negligence, however, is to be judged in the light of any emergency confronting them. There may be circumstances requiring the submission of the issue of negligence to the jury.

■■ It is axiomatic that an opinion in a former case is authority only for the points actually decided and that

general expressions in the opinion are to be taken and understood as made in connection with the case under consideration. Language which was not decisive in the former decision is not binding as a precedent. Rush v. Chattanooga Du Pont, etc., 210 Tenn. 344, 358 S.W.2d 333; Shousha v. Matthews Drivurself Service, Inc., 210 Tenn. 384, 358 S.W.2d 471; Vinson v. Nashville, Chatt. & St. L. Ry., 45 Tenn.App. 161, 321 S.W.2d 841.

■ While rather broad, the charge in this case, as applied to the undisputed facts, was not prejudicial. There is nothing in the proof to which we have referred from which a jury might conclude that the attention required by the baby had any bearing on the failure to discover and remove the sponge. Dr. Sam Harrison and the circulating nurse returned to the operating room before the incision was closed and both nurses performed their assigned duty of counting sponges just as they would have done if the circulating nurse had never left the room. The first assignment based on the charge is accordingly overruled.

■ We find without merit the insistence that the jury was guilty of misconduct in discussing the possibility that defendant was protected by insurance. The careful and experienced trial judge, after examining all of the jurors except one who was ill, expressly found that "whatever was said in the jury room about the subject of insurance liability had no influence whatever on the verdict of the jury, either as to the question of liability or as to the question of the amount of the damages." The great weight of the evidence supports the Court's finding. The Court could have found from the weight of the proof that no mention was made of insurance in the jury room.

As to the excessiveness of the verdict, there is evidence that Mrs. Wilkerson became violently ill and suffered the most excruciating pain for months before another doctor discovered the presence of the sponge and removed it by opening the abdomen. The incision, due to the infection caused by the sponge, was slow in healing and had to be left open for several days to allow drainage. Another operation was required to repair a hernia near the site of the incision.

There is proof from which the jury may have found that Mrs. Wilkerson was predisposed to nervousness and emotional instability with the result that her anxiety and suffering before the sponge was discovered and during and following the two operations mentioned had a greater impact upon her than would otherwise have been the case; that she has been under the care of a psychiatrist who has prescribed the use of tranquillizers and that she has been a patient more than once in a mental institution. There is evidence that she has suffered a personality change and has largely been staying at her mother's home away from her husband. The case was tried two years after the operation and this arrangement seems to have largely continued until the case was tried.

We can not say under the proof that the verdict is excessive, allowing the jury and trial judge the proper exercise of their discretionary power to assess the damages in cases of this nature.

The amount allowable in personal injury cases rests primarily within the discretion of the jury and will not be disturbed on appeal for excessiveness unless the amount is so large as to shock the judicial conscience and amounts to a palpable injustice. McClard v. Reid,

190 Tenn. 337, 229 S.W.2d 505; Board of Mayor & Aldermen of Covington v. Moore, 33 Tenn.App. 561, 232 S.W.2d 410; Blalock v. Temple, 38 Tenn.App. 463, 276 S.W.2d 493.

Affirmed.

Cooper and Parrott. JJ., concur.