Linda D. GERMAN and William L. German, Appellants.

v.

George C. NICHOPOULOS, M. D. and Baptist Memorial Hospital, Appellees.

Court of Appeals of Tennessee, Western Section.

Sept. 15, 1978.

Certiorari Denied by Supreme Court Feb. 12, 1979.

Richard J. Ryan, Sr., Richard J. Ryan, Jr., Memphis, for appellants.

J. Kimbrough Johnson, Max Shelton, Memphis, for appellees.

NEARN, Judge.

This is a plaintiffs' appeal from the action of the Trial Judge in a medical malpractice case in (a) directing a verdict for the defendant hospital at the close of plaintiffs' proof and (b) directing a verdict for the defendant doctor at the close of all the proof.

Plaintiff, William L. German, is the husband of Linda D. German and his claim is for loss of consortium and medical expenses incurred in behalf of his wife. Since his claim is purely derivative, during the course of this Opinion we will refer to the plaintiffs in the singular. By the use of the term, plaintiff, we refer only to Linda D. German.

The complaint alleges the following facts: On the advice of her physician, the defendant, Dr. Nichopoulos, plaintiff was admitted to the defendant hospital as a patient for observation and tests for weakness and palpitation; further, that while undergoing tests that a resident intern, or doctor of the hospital, gave plaintiff an intravenous injection into the back of her right hand, which injection "failed". Upon receiving the injection in her right hand, she immediately felt pain and the back of her hand began to swell. Plaintiff complained about this condition to the nurses present and later to Dr. Nichopoulos. Plaintiff was assured by Dr. Nichopoulos that both the swelling and pain would subside. Although the pain to some extent lessened, the swelling did not. Dr. Nichopoulos, while treating her on an out-patient basis, continued to advise plaintiff that the swelling would subside. Further, "that this swelling produced another reaction in that her fingers began to draw toward the palm of her hand, but that she could not close her hand; that her hand resembled a claw." Plaintiff sought other medical advice and, as a result thereof, underwent surgery in an attempt to improve the function of the hand. Permanent scarring of the right hand and permanent impairment of its use have resulted.

The acts of negligence of the defendants were set forth in the complaint with specificity as follows:

### IV.

### ACTS OF NEGLIGENCE OF CO–DEFENDANT, BAPTIST MEMORIAL HOSPITAL

1. That the defendant, by and through their agents, servants, or employees, in endeavoring to give an injection in the top of the plaintiff's hand did not exercise that degree of skill and care ordinarily exercised by others of the profession in the City of Memphis, State of Tennessee.

2. That the defendant, by and through their agents, servants, or employees, failed to inform the plaintiff, Linda D. German, of the risks incident to giving the injection in the top of her hand, thereby invalidating any consent,

express or implied, which she may have given regarding this injection.

3. At the time of the injection into the plaintiff's hand the defendant was in exclusive control of the plaintiff and her surroundings, and the instrumentalities and procedures used were under the sole and exclusive knowledge and control of the defendant.

4. That the defendant failed to exercise ordinary and reasonable care for the safety and well-being of Linda D. German under the existing circumstances.

5. That the defendant failed to use reasonable care that is regularly exercised in the community in the giving of injections so as to avoid injury to the hand of the plaintiff.

6. That the defendant failed to use reasonable care in attending to the plaintiff's hand after the injection and failed to react to her complaints of pain and swelling in a reasonable manner, thus preventing a lessening of the plaintiff's injury.

7. That the defendant failed to use reasonable care in notifying the plaintiff, William L. German, of his wife's injury so that he might seek proper medical care for his wife.

8. That the defendant failed to use reasonable care by their failure to inform the plaintiff of the risks incident to such an injection, thereby injecting the plaintiff's hand without her informed consent.

V.

### ACTS OF NEGLIGENCE OF CO–DEFENDANT, GEORGE C. NICHOPOULOS, M.D.

1. That the defendant failed to exercise ordinary and reasonable care for the safety and well-being of Linda D. German under the existing circumstances.

2. That the defendant failed to exercise that degree of skill, care and ability that is regularly exercised by other competent physicians in this community.

3. That the defendant failed to use reasonable care in attending to the plain-

tiff's hand after the injection and failed to react to her complaints of pain and swelling in a reasonable manner, thus preventing a lessening of the plaintiff's injury.

4. That the defendant failed to use reasonable care in notifying the plaintiff, William L. German, of his wife's injury so that he might seek proper medical care for his wife.

5. That the defendant failed to use reasonable care by his failure to inform the plaintiff of the risks incident to such an injection, thereby injecting the plaintiff's hand without her informed consent."

Eleven Assignments of Error are filed in this Court. Eight of the Assignments of Error collectively raise but two issues which are (a) did the Trial Judge err in directing a verdict for the defendant hospital at the close of plaintiffs' proof and (b) did the Trial Judge err in directing a verdict for the defendant doctor at the close of all the proof. Two of the Assignments of Error complain of evidentiary exclusions, and the remaining Assignment of Error complains of the refusal of the Trial Judge to permit plaintiff to take a non-suit as to the defendant hospital.

We will dispose of the non-suit complaint first.

The record shows that at the close of plaintiff's proof counsel for both defendants moved for directed verdicts. Extended arguments by all counsel were had with questions and observations made by the Court and responses thereto by counsel. At the close of argument counsel for plaintiff stated, "Again I feel that we should be allowed to go to the jury on the question of the treatment of the Baptist Hospital. And I've noted my reasons for that. I stand on them." Thereafter, the Trial Judge considered the matter, restated the positions of the parties, noted that plaintiff sought recovery against the hospital on three theories, i. e., the doctrine of *res ipsa loquitur*, negligence, and lack of informed consent, discussed plaintiff's proof and verbally concatenated the reported Tennessee cases he

thought applicable to the theories and proof. He, first, explicitly directed a verdict in the hospital's favor on the issue of res ipsa,[1] then stated there was no evidence whatsoever of negligence on the part of the hospital or the intern, then stated insofar as the theory of informed consent is concerned, there was no proof that the injection by the hospital was without consent and there was no evidence that the hospital withheld any vital information that: (we now copy from the record)

"would vitiate any verbal or written consent.

So on the three theories—

MR. RYAN, JR.: Your Honor, can I consult with my co-counsel just one minute?

MR. RYAN, SR.: Excuse us, Your Honor.

THE COURT: All right.

MR. RYAN: Your Honor, at this time, just as regard to the Baptist Hospital, I'd like to take a non-suit.

MR. SHELTON: If Your Honor please, I'm going to object.

THE COURT: It's come too late, Counselor. It's been submitted to the Court.

MR. RYAN: Thank you, Your Honor.

MR. SHELTON: Not only that, but the Court has already ruled.

THE COURT: So the Court will grant a directed verdict as to the Baptist Hospital on all three theories—res ipsa loquitur, negligence, and informed consent."

In his brief, plaintiff's counsel argues, "While the Court was outlining the theories of the parties and the applicable law, Counsel for the appellants moved for a non-suit _ _ _." The only way we can answer that argument is to simply say; it isn't so. We are cited to the Tennessee Rules of Civil Procedure, Rule 41.01 and various reported cases which are all to the effect that a plaintiff may take a non-suit "prior to the ruling of the court sustaining a motion for a directed verdict." The cases are not here applicable.

We concur in the statement of the Trial Judge which is found in the order overruling the motion for a new trial:

"with respect to the assignment of error specifically complaining that the plaintiff should have been permitted to take a non-suit as to the defendant Baptist Memorial Hospital, the Court is of the opinion and finds that said defendant's motion for a directed verdict had been argued and submitted to the Court and the Court had ruled thereon prior to the motion for non-suit being made."

Accordingly, the Assignment of Error is overruled.

We will now take up the Trial Court's action in directing a verdict for the defendant hospital at the conclusion of plaintiff's proof.

As may be perceived from the portions of the complaint heretofore copied, recovery was sought from the hospital on theories of negligence (Acts 1, 4, 5, 6, and 7 set out in the complaint), failure to obtain an informed consent (Acts 2 and 8), and the doctrine of res ipsa loquitur (Act 3).

A recovery based on a theory of negligence requires proof of more than a negligent act. The elements necessary to recover are: (a) negligent act which (b) causes a (c) loss. There is absolutely no proof in this record that the injection was negligently administered. To correct that deficiency in the proof, the Trial Court and this Court are called upon to conclude negligence under the theory of res ipsa. As to causation, counsel for plaintiff contends he has proved that by medical testimony, or if not, by "common knowledge". There is no doubt plaintiff has proved the element of loss.

Testimony of plaintiff's medical witness is that swelling sometimes occurs when an injection is given in veins at the back of the hand with no negligence whatsoever on the part of anyone. Further, that sometimes

---

1. The Trial Judge stated ". . ., the proof in this case does not meet the standard for it to be a case in which the doctrine of res ipsa loquitor [sic] would be applicable. The Court will grant a directed verdict as to that issue in gavor [sic] of the Hospital."

there is a natural leakage of the injected fluid from the patient's vein into the surrounding tissue.

■ The very heart of the *res ipsa* doctrine is the principle that the injury complained of *does not ordinarily occur absent negligence* on the part of the person who has the instrumentality used in his exclusive control. See *Brown v. University Nursing Home, Inc.* (1972 Tenn.App., M.S.) 496 S.W.2d 503; *Swiney v. Malone Freight Lines* (1976 Tenn.App., E.S.) 545 S.W.2d 112. The Court cannot take judicial notice that whenever an injection is given which causes pain and swelling, negligence is ordinarily present, especially so when the proof is to the contrary. Consequently, since there is no proof of an act of negligence on the part of the hospital in the administration of the injection, and no inference thereof can be supplied by law, all other arguments of counsel, save two, regarding the action of the Trial Court in directing a verdict for the defendant hospital at the close of plaintiff's proof are moot as proof of the first necessary element of recovery is absent.

■ Liability predicated on the doctrine of informed consent is not dependent upon the existence of negligence in the performance of a physical act. Liability is predicated upon negligence of the physician in the failure to reasonably advise the patient regarding the treatment recommended. The necessary result of that failure is that any consent given by the patient for that treatment is said to be without an informed or knowledgeable consent. *Ray v. Sheibert* (1972 Tenn.App., M.S.) 484 S.W.2d 63 and *Longmire v. Hoey* (1974 Tenn.App., W.S.) 512 S.W.2d 307. However, in order to recover under this theory in a medical malpractice case, there must be some medical testimony as to the usual and customary advice given to patients to procure consent in similar situations. Section 23–3417

T.C.A. requires the same.[2] There is absolutely no such testimony in the record.

■ The issue of alleged negligence in the treatment given plaintiff by the hospital after the injection is a non-issue as there is no proof as to what the hospital was supposed to do to reasonably treat plaintiff. See T.C.A. § 23–3414.

We now consider the propriety of the Court's action in directing a verdict for the defendant, Dr. Nichopoulos.

Numerous arguments are propounded to induce us to reverse the Trial Court's action in granting a directed verdict in favor of Dr. Nichopoulos. We will not consider all, but will discuss one which renders the rest moot. As we have previously noted, three elements are necessary for recovery in a negligence case, i. e., a negligent act, a loss, and a causal connection between them. See *Tennessee Trailways, Inc. v. Ervin* (1969) 222 Tenn. 523, 438 S.W.2d 733. A lack of any of the three is fatal to a plaintiff's case. Therefore, we will consider only one—causation.

■ *Res ipsa* has only to do with negligence and just as positive proof of negligence does not constitute proof of causation; proof of negligence via *res ipsa* does not constitute proof of causation.

■ Ordinarily *res ipsa* is not applicable to medical malpractice cases to afford proof of negligence. *Quinley v. Cocke* (1946) 183 Tenn. 428, 192 S.W.2d 992. This is true because neither lay people nor Courts possess reliable common knowledge in such technical matters. Therefore, expert testimony regarding the standard of care or duty in order to show negligence is required. See *Bowman v. Henard* (1977 Tenn.) 547 S.W.2d 527. Of course, when medical negligence is, so to speak, as plain as a fly floating in a bowl of buttermilk, an exception to that general rule is permitted

---

**2.** "23–3417. Proving inadequacy of consent.— In a malpractice action, the plaintiff shall prove by evidence as required by § 23–3414(b) that the defendant did not supply appropriate information to the patient in obtaining his informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which he practices and in similar communities."

and the doctrine may apply; such as when a sponge is left in the gut; the eye cut when performing an appendectomy. See *Harrison v. Wilkerson* (1966 E.S.) 56 Tenn. App. 188, 405 S.W.2d 649 and *Meadows v. Patterson* (1937 E.S.) 21 Tenn.App. 283, 109 S.W.2d 417.

For the same reasons the general rule is the same in regard to medical causation. In medical malpractice cases causation is also generally a matter requiring expert testimony. However, that rule also has the "common knowledge" exception; such as an obstruction in the throat will cause strangulation. *Crowe v. Provost* (1963 M.S.) 52 Tenn.App. 397, 374 S.W.2d 645. The patent presence, so to speak, of the "fly in the buttermilk" type of cause is the basis for the exception that liability may be determined, without medical testimony as to causation, in the exceptional cases, if all other necessary elements are shown.

Since there is no evidence in the record of any negligence in the administration of the injection (which Dr. Nichopoulos did not administer), plaintiff's cause of action as to the doctor must rest on the negligence (with all elements proven) in the treatment given by him. Now, Dr. Nichopoulos is not sued for any negligence in the administration of the injection, but is sued for negligent acts in plaintiff's after treatment which allegedly caused plaintiff's hand to be contorted to its claw-like appearance. The closest thing found in the record that approaches medical testimony on *causation* is a lengthy hypothetical question propounded by counsel which asks a medical witness to assume the injection, treatment by Dr. Nichopoulos (or lack thereof), and all facts, down to the claw-like appearance of plaintiff's hand and closed with, "state whether or not, in your opinion, that you can state to a reasonable degree of medical certainty the injury experienced by Mrs. German was caused by the injection encountered on July 6, 1974?" The answer was, "I think it's possible."

Aside from the fact of the speculative nature of the answer, (all things are possible), the question is directed to a specific act of negligence which allegedly caused plaintiff's injury. That act (injection) was not shown to have been negligently done by the proof and was not done by Dr. Nichopoulos. Neither the question nor the answer has anything to do with the *treatment* of Dr. Nichopoulos as a *cause* of the injury.

However, counsel for appellant insists that it is within the common knowledge of laymen that the after injection treatment afforded by Dr. Nichopoulos[3] caused the claw-like[4] appearance of plaintiff's hand. We do not agree. We are of the opinion that whether or not Dr. Nichopoulos' treatment of plaintiff, (which, *arguendo*, we concede for the purpose of treating this Assignment of Error to have been not within community medical standards) was a cause of plaintiff's difficulties is not a matter of which we may take judicial notice or is within the common knowledge of laymen. It requires expert testimony and, in this case, there is none. Again, see T.C.A. § 23–3414.

The evidentiary Assignment of Error is addressed to a failure to admit testimony which counsel for appellant insists would show negligence on the part of Dr. Nichopoulos in the treatment of plaintiff. The issue is moot. Proof of negligence without proof of causation is nothing.

Counsel for appellant faults the Trial Judge for not permitting him, near the close of plaintiff's proof, to amend his complaint as well as his theory so as to charge

3. Subsequent to the injection on July 6, 1974, Dr. Nichopoulos examined, but did not begin to treat Mrs. German's hand until August 1974. In August he twice prescribed anti-inflammatory drugs for the hand. On September 21, 1974, he prescribed exercise with a rubber ball and a continuation of the taking of anti-inflammatory drugs.

4. Plaintiff's medical proof is that the claw-like appearance directly resulted from "adhesive tendonitis of the extensor tendons of her hand and pericapsulitis of the matacarpal phalangeal and interphalangeal joints of her right hand."

Dr. Nichopoulos with negligence in his diagnosis of Mrs. German. From the trial record the only evidence of any motion to amend, by the plaintiff, appears on page 211 of the Bill of Exceptions. Subsequent to the Trial Judge's statement that plaintiff's pleadings were not broad enough to include a negligence because of misdiagnosis theory, plaintiff's counsel asked the court:

"May I make a motion to amend my pleadings?"

The Court answered with the question:

"Amend your pleadings?"

Following the Court's question the so-called motion to amend was pursued no further nor further mentioned.

We find that no valid motion to amend was ever made. The appellant's fourth Assignment of Error is without merit.

 We last consider appellant's complaint that the matter should have gone to the jury on the issue of lack of informed consent. This Assignment of Error must be answered in the same manner as most of the others. There is simply no competent proof that presents any jury issue. Counsel insists that simply because plaintiff testified that no one told her of any possible risks prior to receiving the injection, a *prima facie* case based on lack of informed consent was made out. We disagree and hold, as did the Middle Section of this Court in an unreported case,[5] that, in matters of informed consent the plaintiff has the burden of proving by expert medical evidence, (a) what a reasonable medical practitioner of the same or similar communities under the same or similar circumstances would have disclosed to the patient about attendant risks incident to a proposed diagnosis or treatment and (b) that the defendant departed from the norm. These are the same criteria set forth in T.C.A. § 23–3417. There is no medical testimony in the record that approaches those criteria.

The result is that all Assignments of Error are overruled and the judgment below affirmed. All costs are taxed against appellant and surety.

Done at Jackson in the two hundred and third year of our Independence and in the one hundred and eighty-third year of our Statehood.

MATHERNE and EWELL, JJ., concur.

---

5. *Oaks v. Gesslar*, unreported case of the Middle Section, Court of Appeals filed February 27, 1976 and no certiorari applied for.