No. 84-84

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

ELIZABETH RUDECK, in her own right and
as Personal Representative of the
Estate of ALFRED LYNDON RUDECK,
also known as LYNDON RUDECK,
deceased,

          Plaintiff and Respondent,

    -vs-

KERMIT J. WRIGHT, M.D., and HELENA
MEDICAL CLINIC, P.S.C.,

          Defendants and Appellants.

---

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            James A. Robischon argued, Butte, Montana
            Dunlap & Caughlan, Butte, Montana

      For Respondent:

            Terry N. Trieweiler argued, Whitefish, Montana
            Geoffrey L. Brazier, Helena, Montana

---

           Submitted:  May 22, 1985

             Decided:  September 12, 1985

Filed:

*Ethel M. Harrison*

---
Clerk

Honorable Joel G. Roth, District Judge, delivered the Opinion of the Court.

This is a medical malpractice case which is commonly referred to as a "foreign object" case. The case was tried to a jury in Lewis and Clark County District Court and resulted in a $75,000 verdict on the wrongful death claim and zero on the survival claim. Following trial, plaintiff Rudeck moved for a new trial. The District Judge ordered a new trial. Defendant Wright appeals from that order and, additionally, raises other issues for appellate review. Plaintiff appeals the denial of her motion for a directed verdict. We affirm the trial court's ruling requiring a new trial.

The issues for review are as follows:

1. Was there error in granting plaintiff Rudeck's motion for a new trial?

2. Was there error in granting plaintiff Rudeck's pretrial motion for partial summary judgment on the negligence of defendant Wright?

3. Was there error in refusing to allow defendant Wright to present testimony relating to the conduct of concurrent tort-feasors and a subsequent tort-feasor?

4. Was there error in the trial court's instruction on legal causation rather than on proximate causation?

5. Was there error in denying plaintiff Rudeck's motion for a directed verdict?


FACTS

On May 27, 1980, Mr. Rudeck, age seventy-four years and a retired state employee residing with his wife in Helena, Montana, was operated on for a hernia by defendant Dr. Wright

2

at St. Peter's Community Hospital in Helena. During surgery, defendant Wright placed a piece of surgical gauze measuring about thirty centimeters by thirty centimeters and referred to as a "lap mat" into the exposed abdominal cavity. The lap mat was not removed prior to closing the incision.

Two surgical nurses, both employees of the hospital, assisted defendant Wright during the operation. They were responsible for the lap mat count, and they neglected to inform defendant Wright of an unaccounted lap mat prior to his closing.

Because no one was then aware of the foreign object inside the patient, Mr. Rudeck was released from the hospital on June 1, 1980, apparently recovering normally. However, during the months that followed the wound continued to drain, he began to lose his appetite, he lost weight, fluid began to build up in his legs, and toward the end of September 1980 his color was becoming grayish. From the time he was released from the hospital on June 1 until September 29, 1980, Mr. Rudeck remained under the care of defendant Wright and was seen by defendant Wright on thirty-four occasions.

Defendant Wright, becoming concerned about the wound and believing that X-rays of Mr. Rudeck's abdominal area were necessary, referred Mr. Rudeck to Dr. Donald L. Pedersen, a Helena radiologist, for X-rays. The X-rays were taken on June 20, 1980. The X-rays revealed the presence of the lap mat, but Dr. Pedersen did not detect the foreign object and, hence, did not report the presence of the foreign object to defendant Wright.

Mr. Rudeck's physical condition deteriorated to the point that Mrs. Rudeck, on October 6, 1980, took it upon

3

herself to admit her husband to the Veterans Administration Hospital at Fort Harrison in Helena.

X-rays were taken at the VA Hospital, and for the first time the presence of the foreign object in Mr. Rudeck's abdomen was detected. Mr. Rudeck was too ill and weak for immediate surgery to remove the lap mat. He was then placed under presurgical care at the VA Hospital. Before he regained sufficient strength to tolerate another surgical procedure, on October 24, 1980, Mr. Rudeck's condition rapidly deteriorated, and he died that day.

An autopsy was performed at the VA Hospital on October 25, 1980, which confirmed the presence of the lap mat inside the deceased's abdomen. The lap mat had wadded up into a ball about the size of an adult's fist and the bowel had wrapped around it, cutting off the blood supply to the lower bowel and causing perforations in the bowel with resulting escape of fecal material.

Following her husband's death, Mrs. Rudeck filed a complaint against Dr. Wright and Dr. Pedersen. Two medical malpractice claims were alleged: one in her own right for alleged wrongful death, and one in her capacity as personal representative of her deceased husband's estate for his survival claim up to the time of his death.

Defendant Wright filed an answer, a cross-claim against Dr. Pedersen seeking indemnity and a third party complaint against St. Peter's Community Hospital seeking indemnity.

Dr. Pedersen answered the plaintiff's complaint and Dr. Wright's cross-claim.

St. Peter's Hospital answered Dr. Wright's third party complaint and filed a counter-claim against Dr. Wright seeking indemnity.

4

Plaintiff Rudeck, following discovery, filed a motion for partial summary judgment against Dr. Wright and Dr. Pedersen. Dr. Pedersen admitted liability and settled with plaintiff Rudeck. The trial court granted partial summary judgment against defendant Wright on the negligence issue.

Prior to trial, St. Peter's Hospital settled with plaintiff Rudeck.

Immediately prior to trial Dr. Wright moved to sever his alleged claims against Dr. Pedersen and the hospital from plaintiff Rudeck's claims against him and sought to go to trial on plaintiff Rudeck's wrongful death claim and the estate's survival claim. The trial court granted severance, and the jury trial on plaintiff Rudeck's claims against defendant Wright commenced on November 28, 1983.

The jury returned a verdict awarding plaintiff Rudeck $75,000 on her wrongful death claim and zero on the estate's survival claim.

Thereafter, plaintiff Rudeck moved for a new trial which was granted by the trial judge.

The issues on appeal, noted earlier herein, will now be discussed.

ISSUE #1. PLAINTIFF RUDECK'S MOTION FOR A NEW TRIAL

There are several grounds upon which a new trial may be granted. They are set forth in the seven subsections to § 25-11-102, MCA. The ground asserted by plaintiff Rudeck is that the jury's verdict is against law. Subsection (6) of the cited statute lists a verdict against law as being one permissible ground for a new trial.

We hold that the jury's verdict in awarding damages on the wrongful death claim and in awarding no damages on the

5

survival claim is totally inconsistent and is contrary to the mandates of law. The trial judge was correct in granting plaintiff Rudeck's motion for a new trial.

The question of defendant Wright's negligence had been determined by the court as a matter of law before the trial started when plaintiff Rudeck's motion for partial summary judgment on the negligence issue was granted. The jury only had to consider the issue of whether or not defendant Wright's negligence was the cause of Mr. Rudeck's death, and if so, the amount of damages. In awarding $75,000 on the wrongful death claim, the jury found that defendant Wright's negligence was a substantial factor in causing the death.

If Mr. Rudeck's death was caused by the negligence of defendant Wright, then the earlier injury to Mr. Rudeck which culminated in his death must have been caused by the same negligence. If the same negligence (leaving the lap mat inside the patient) caused the personal injury to the living Mr. Rudeck and that same negligence caused his later death, the jury would be compelled to award damages for Mr. Rudeck's personal injury (which were sought in the survival claim on his behalf by the personal representative of his estate) as well as awarding damages on the wrongful death claim. Because the jury did not do so, its verdict is inconsistent and is against law.

A similar situation arose in the case of Abernathy v. Eline Oil Field Services (Mont. 1982), 650 P.2d 772, 39 St.Rep. 1688, where the same negligent act (rear end collision) caused a personal injury to one person and the death of another person. In that case the jury found that the same act of negligence caused the personal injury to the one person but not the death of the other person. A new trial

was ordered in that case because the verdicts were inconsistent and against law. The jury's conclusion that the tort-feasor had injured the one person mandated the further conclusion that the same tort-feasor's same negligent act also caused the death of the other person. Although two persons were involved in the Abernathy case, whereas only one person is involved in the instant case, the same conclusion is reached because the same negligence of the same defendant is the basis both for the wrongful death action, § 27-1-513, MCA, and the survival action, § 27-1-501, MCA. (See Swanson v. Champion International Corp. (1982), 197 Mont. 509, 646 P.2d 1166, for a discussion of actions permissible in Montana for tortious death.)

Stated another way, in the instant case there would have been no wrongful death without the earlier injury to the living Mr. Rudeck.

ISSUE #2. WAS DR. WRIGHT NEGLIGENT AS A MATTER OF LAW

Was the trial judge correct when ruling as a matter of law that Dr. Wright was negligent in leaving a foreign object inside his patient during surgery?

Other states which have ruled on this issue are divided in their holdings. There are three rules applied in the different states.

1. The negligence per se rule. Those courts following this rule hold that the failure of a surgeon to remove a foreign object (sponge, needle, clamp, scissors) is negligence per se. The theory is that the surgeon has not measured up to the standard of care required of a surgeon in exercising his professional skills. Consequently, the surgeon who violates the legally mandated standard of care of

7

exercising the professional care and skill which other professionals in his specialty would exercise in the same or similar circumstances is negligent per se.

The rule is best stated in the case of McCormick v. Jones (Wash. 1929), 278 P. 181, 182, wherein the court said:

> ". . . We also think that the court can say as a matter of law that when a surgeon inadvertently introduces into a wound a foreign substance, closes up the wound, leaving the foreign substance in the body, there being no possibility of any good purpose resulting therefrom, that act is negligence."

A general statement of the rule is found in 61 Am.Jur.2d Physicians, Surgeons, Etc., § 258 at 397-398:

> "A surgeon undertaking to perform an operation requiring the placing of sponges in the incision does not complete his undertaking until the sponges are properly removed. Many cases of malpractice arising out of surgical operations result from the leaving of surgical sponges or other foreign substances in the wound after the incision has been closed. . . . Thus, there are many cases which take the view that the failure of a surgeon to remove all sponges or foreign substances from a surgical wound is negligence per se
> . . ."

The interrelationship between the surgeon and the sponge nurses is also explained in 61 Am.Jur.2d, § 258 at 399, as follows:

> "While the custom or usage of having a 'sponge nurse' account, both before and after a surgical operation, for all sponges used during the operation, has been approved by some courts, it is generally held that surgeons cannot relieve themselves from liability for injury to a patient caused by leaving a sponge in the wound after an operation, by the facts that such custom or usage prevails in the community, and that they followed and relied on such count as conclusive that all sponges had been accounted for. The reason for this rule is that leaving a surgical sponge in the abdominal cavity is a sort of case in

8

which the type of harm itself raises so strong an inference of negligence, and the physician's duty to prevent harm is so clear, that expert testimony is not required to establish the prevailing standard of care, and the inference arising from res ispa loquitur is not refuted by the assertion that the nurse's sponge count was reported as in order, because such a report does not relieve the operating and supervising surgeon of his responsibility. . . ."

In Guilbeau v. St. Paul Fire and Marine Insurance Co. (La.App. 1975), 325 So.2d 395, an operating surgeon was held to be negligent per se when he had placed a laparotomy pad in the patient's body during colectomy surgery and it was left there following surgery. Two surgical nurses on the hospital surgical team had miscounted the pads and mistakenly reported to the surgeon that all pads were accounted for.

In Harrison v. Wilkerson (Tenn. 1966), 405 S.W.2d 649, the operating surgeon left a sponge inside the patient during a Cesarean delivery when the two nurses assisting during the surgery miscounted the sponges. The operating surgeon was held to be negligent as a matter of law.

In Burke v. Washington Hospital Center (D.C. Cir. 1973), 475 F.2d 364, an operating surgeon attempted to shift responsibility for leaving a sponge in the patient's abdomen during surgery by asserting that the attending nurse's sponge count was in error. The court said at page 365, "[w]hile this may be enough to support shared liability on the part of the nurse's employer, Washington Hospital Center, it does not relieve the operating and supervising surgeon of his responsibility." Also see, 10 ALR3d 9; 12 ALR3d 1017.

2. The res ipsa loquitur rule. This rule provides that the failure of a surgeon to remove a foreign object gives rise to an inference of negligence. The reasoning is

9

that when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury does not occur if the one having such control uses proper care, then the law infers negligence on the part of the one in control as the cause of the injury. Negaard v. Feda (1968), 152 Mont. 47, 446 P.2d 436. Other medical malpractice cases which discuss the res ipsa loquitur doctrine and its applicability in a medical malpractice setting are Parks v. Perry (N.C.App. 1984), 314 S.E.2d 287; Morgan v. Willis-Knighton Medical Center (La.App. 1984), 456 So.2d 650; Gallegor by Gallegor v. Felder (Pa.Sup. 1984), 478 A.2d 34; and Sammons v. Smith (Iowa 1984), 353 N.W.2d 380. Once the presumption of negligence arises under the res ipsa rule, the burden of rebutting the presumption shifts to the defendant.

3. The ordinary negligence rule. Here the failure of the surgeon to remove the foreign object is simply evidence of the surgeon's negligence. The plaintiff would have the burden of proving by a preponderance of the evidence what the standard of care is (through expert medical testimony) and that the surgeon violated that standard of care. One element in establishing a violation of the standard of care would be proof of the surgeon's failure to remove the foreign object.

After considering the above three rules we conclude that the best rule and the rule to be adopted in Montana is the "negligence per se" rule. When a patient is on the operating table, he has put his body and life into the hands of the surgeon. If a foreign object is mistakenly left in the patient's body, it seems to us that it takes no expert medical testimony to establish that the surgeon was negli-

10

gent. The court can find negligence as a matter of law for an obvious violation of the standard of care required.

Under either the ordinary negligence rule or the res ipsa rule the surgeon would be attempting to totally avoid his own liability by pointing his finger at the surgical nurses who were also negligent in failing to correctly count the sponges and at the radiologist who later took X-rays and failed to detect the sponge and failed to inform the surgeon of the presence of the sponge in the patient's abdomen so that corrective surgery could immediately be performed.

The surgeon is the "captain of the ship" and he bears the responsibility of the surgical procedure. McCullough v. Bethany Medical Center (Kan. 1984), 683 P.2d 1258. Other persons, such as the surgical nurses who maintain the sponge count, and such as the radiologist who later takes X-rays, may also be negligent and liable as concurrent tort-feasors or as a subsequent tort-feasor, but the surgeon who initially was negligent in the first instance and whose original negligence set in motion the concurrent and following negligent acts or omissions should not be allowed to avoid his liability. The "negligence per se" rule would not allow the surgeon to avoid his own negligence.

### ISSUE #3. EXCLUSION OF EVIDENCE OF CONDUCT OF CONCURRENT AND SUBSEQUENT TORT-FEASORS

Prior to trial, defendant Wright successfully moved to sever his cross-claim against Dr. Pedersen and his third party claim against St. Peter's Community Hospital. Also prior to trial plaintiff Rudeck successfully moved to exclude evidence of the acts and omissions of the surgical nurses and of Dr. Pedersen. Consequently, the trial commenced on

11

plaintiff Rudeck's wrongful death claim and on the estate's survival claim against only one defendant, and that defendant was Dr. Wright.

Defendant Wright contends he should have been allowed to present evidence of the separate negligence of the nurses and the separate negligence of Dr. Pedersen in an attempt to immunize himself from liability for his own negligence.

Because we view the negligence of the nurses as separate but concurrent negligence and the negligence of Dr. Pedersen as separate but subsequent negligence, we will discuss the status of the concurrent tort-feasors and the subsequent tort-feasor separately.

As to the nurses' negligence, it is clear that the sponge count and the surgical procedure are occurring simultaneously. We hold that if the effect of defendant Wright's negligence in leaving a foreign object inside his patient's wound actively and continuously acts to cause harm to his patient, the fact that the active and substantially simultaneous negligent act of the nurses is also a substantial factor in bringing about the harm to the patient does not protect Dr. Wright from liability. Moreover, the nurses (and the hospital) are not relieved of liability for their own negligent acts or omissions. See, 2 Restatement of Torts 2d, Section 439.

As to Dr. Pedersen's negligence, it is clear that his negligent conduct occurred about three weeks after Dr. Wright's negligent act and, hence, not concurrently therewith. It is noted that Dr. Wright referred Mr. Rudeck to Dr. Pedersen for the X-rays. The question is whether or not the subsequent and independent negligent act of Dr. Pedersen in misreading the X-rays can relieve Dr. Wright from his own

12

liability. We hold that if Mr. Rudeck's injury and death resulted from the original negligence of defendant Wright in failing to remove the lap mat and also his injury and death in part resulted from a risk (misreading the X-rays) inherent in the later medical procedure of taking X-rays which were required to discover the reason for Mr. Rudeck's post-surgery problems, the original tort-feasor (defendant Wright) remains liable regardless of whether the later medical procedure was done in a negligent manner. The reason is that the chain of causation remains unbroken. However, it should be remembered that, although the original tort-feasor is liable for the additional harm created by the intervening tort-feasor (Dr. Pedersen), the intervening tort-feasor is not relieved of liability for his own negligent act. Dooley, 1 Modern Tort Law, § 10.04.

The law requires that at times a tort-feasor must answer for the subsequent negligence of a doctor. The classic situation is where a person is injured in an auto accident due to the negligence of a tort-feasor and is required to submit to medical treatment. If the treating doctor is negligent in his treatment of the injured person, the original tort-feasor must answer to the injured person for the malpractice of the doctor. That principle of tort liability is based on the theory that the original negligent act is a proximate cause of the subsequent injury caused by the malpractice. See, 61 Am.Jur.2d Physicians, Surgeons, Etc., § 301 at 448. In the present case, the original tort-feasor is a surgeon and the subsequent negligence is that of a radiologist. We hold the same principle of tort liability applies when two negligent doctors are the tort-feasors as

13

when the two tort-feasors are a negligent driver and a malpracticing doctor.

In Graham v. Whitaker (S.C. 1984), 321 S.E.2d 40, an ophthalmologist was negligent in putting eye drops into a patient's eyes and not warning of blurred vision and of not providing a safe place for the patient. The patient fell and broke her hip. A surgeon operated on her hip and due to his negligence the patient developed an infection and needed a hip replacement. The court in that case held the original tort-feasor was liable for the intervening negligence of the operating surgeon.

In summary on this issue of excluding evidence of the nurses' concurrent negligence and of Dr. Pedersen's subsequent separate negligence, we hold that such evidence was irrelevant during the trial on the issue of whether Dr. Wright's negligence caused the injury and death of Mr. Rudeck.

### ISSUE #4. LEGAL CAUSE OR PROXIMATE CAUSE

The trial judge instructed the jury that the plaintiff was entitled to damages "legally caused" by Dr. Wright's negligence. In defining "legal cause" the judge instructed as follows:

> "A legal cause of a death is a cause which is a substantial factor in bringing about the death."

Defendant Wright, on the other hand, offered the standard instruction on "proximate cause" as follows:

> "The proximate cause of an injury or damage is that cause which in a natural and continuous sequence, unbroken by any new or independent cause, produces the injury or damage, and without which it would not have occurred."

14

Bear in mind that the present case involves an original tort-feasor (Dr. Wright), concurrent tort-feasors (nurses), and a subsequent tort-feasor (Dr. Pedersen) each of whom committed negligent acts and each of whom may be separately liable.

The proximate cause rule (commonly known as the "but for" rule) may be stated as follows: The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; or conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it.

The "but for" rule serves to explain the vast majority of cases wherein a causation instruction is required. However, there is one type of situation in which it fails. If two or more causes concur to bring about an event, and any one of them, operating alone, would have been sufficient to cause the identical result, some other test is needed. In such cases it is quite clear that each cause has in fact played so important a part in producing the result that responsibility should be imposed upon it; and it is equally clear that neither can be absolved from that responsibility upon the ground that the identical harm would have occurred without it, or there would be no liability at all.

The "substantial factor" rule was developed primarily for cases in which application of the "but for" rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same result. It is possible, and more helpful, to apply an alternative formulation that addresses directly the need for declining to follow the "but for" rule in this context. The alternative formulation is this: When the

15

conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a "but for" cause of event, and application of the "but for" rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event.

The fact situation in which this kind of grouping of defendants is permissible occurs relatively infrequently. The case where this does occur is the case in which each defendant bears a like relationship to the event. Each seeks to escape liability for a reason that, if recognized, would likewise protect each other defendant in the group. Prosser and Keeton, The Law of Torts, 5th ed. at 266-278.

In Snead v. United States (D. D.C. 1984), 595 F.Supp. 658, a medical malpractice action was brought under the Federal Tort Claims Act alleging negligence in medical services performed by government gynecologists. The female patient and her husband alleged that in performing medical services the gynecologists failed to practice medicine in accordance with the required standard of care in examining the patient and that their departure from the required standard of care resulted in their failure to detect that patient's existent but preinvasive cervical cancer and was a substantial factor bringing about the progression and metastasis of that malignancy. At 665 the court held:

> "In cases involving alleged medical mismanagement of a patient's existing and potentially fatal condition, the appropriate test for causation is the 'substantial factor' test. Under this test, plaintiffs must show that the defendant's deviation from the standard of care was a 'substantial factor' bringing about Mrs. Snead's present condition. . . ."

16

In Capone v. Donovan (Pa.Sup. 1984), 480 A.2d 1249, a college football player broke his arm during a scrimmage. He was treated by two doctors immediately. When his arm failed to heal properly, he went to a third doctor. Several months later when the arm still had not healed properly, he went to a fourth doctor who performed surgery to correct the injury. After the patient sued the third doctor for malpractice and settled with him, the patient then sued the first two doctors for malpractice. On the causation issue the court said at 1251:

> "If two or more causes combine to produce a single harm which is incapable of being divided on a logical, reasonable, or practical basis, and each cause is a substantial factor in bringing about the harm, an arbitrary apportionment should not be made. . . ."

We conclude that the instant case is just such an infrequent case where the "but for" rule is inapplicable and the "legal cause" ("substantial factor") rule is the correct instruction to give to the jury.

We do not intend by this decision to abolish the traditional "proximate cause" rule and replace it with the "legal cause" rule. It is the holding of this decision that in view of the particular facts involved in the present case the "legal cause" rule is applicable herein.

## ISSUE #5. THE DENIAL OF PLAINTIFF RUDECK'S MOTION FOR A DIRECTED VERDICT

At the conclusion of defendant Wright's evidence, plaintiff Rudeck moved for a directed verdict to the effect that defendant Wright's negligence was the legal cause of Mr. Rudeck's death. The trial court denied the motion, and we affirm that ruling.

17

There was evidence presented during the trial by defendant Wright's witnesses that the cause of death was acute broncho-pneumonia or heart disease and lung disease. Because there was conflicting evidence on the issue of the cause of Mr. Rudeck's death, the trial court was correct in denying the plaintiff's motion for a directed verdict.

We affirm all of the District Court's rulings and remand the case for a new trial.

_____
Honorable Joel G. Roth, District
Judge, sitting in place of Mr.
Justice Frank B. Morrison, Jr.

We concur:

_____

_____

_____
Justices

18

Mr. Justice Fred J. Weber concurs and dissents as follows:

I concur in the majority opinion as to issue 1 and its conclusion that there was no error in granting plaintiff's motion for a new trial. I also concur with the majority opinion as to issue 5 in holding that there was no error in denying the plaintiff's motion for a directed verdict. I respectfully dissent from the majority opinion as to issues 2, 3 and 4.

The majority opinion indicates that the two surgical nurses who assisted the defendant in the operation neglected to inform Dr. Wright of an uncounted lap mat. The deposition of the nurse making the count discloses that she told Dr. Wright, "Your sponge count is correct." In addition, the evidence disclosed that the lap mat had a tag that made it visible on x-rays, but the radiologist failed to identify the tag.

As to issue 2, I disagree with the majority conclusion that Dr. Wright was negligent as a matter of law because the lap mat was left inside the patient. Such a rule may have been appropriate a number of years ago when it was difficult, if not impossible, to obtain adequate medical testimony regarding the conduct of a surgeon, or prior to Montana's adoption of the modern theory of comparative negligence.

I find no need for such a per se rule for the protection of plaintiffs. I would prefer the ordinary negligence rule under which the plaintiff would have the burden of proving that the surgeon had violated the applicable standard of care. Following that proof, the surgeon would have the opportunity to present his own evidence on the standard of care. More important in a case such as the present, the surgeon would also have the opportunity to present evidence as to negligence on the part of the nurses and the radiologist. That evidence is excluded under the negligence per se rule of the present opinion. I believe a jury is

19

capable of determining whether a medical doctor has met the requisite standard of care and comparing any negligence on the part of the surgeon, the hospital through its nurses, and the radiologist.

I would also accept the res ipsa loquitur rule as described in the majority opinion. While this does place a burden on the surgeon, it at least gives the opportunity for the surgeon to present the evidence that supports his view of the case.

I do not believe that the negligence per se rule is appropriate in modern medical practice, where different people are responsible for various activities during a surgery. For example, it may be the sole duty of an anesthesiologist to monitor a patient's blood pressure and coloring in order to alert the operating physician to any sign of heart failure or oxygen deprivation. In complex procedures such as open heart surgery, two or more teams of doctors may be required to work on different parts of a patient's body at the same time. Under modern surgical procedures, it is impractical to assume that a "chief" surgeon can perform surgery and simultaneously supervise and monitor every activity of each of the parties involved in the operation. It is also impractical to suggest that the "chief" surgeon is strictly liable for the conduct of everyone who assisted in the surgical procedure.

Likewise, I see no reason why a surgeon should be held negligent per se for relying on the expertise of a specialist whose advice is sought for diagnostic purposes. I would trust the jury to determine whether, under all the circumstances of the case, the surgeon's reliance on the expert's advice was reasonable. I would also trust the jury to compare any negligent conduct on the part of the surgeon with a radiologist's negligent reading of post-operative x-rays.

20

Under issue 3, the majority opinion excludes the evidence of the conduct of the concurrent tortfeasor, the nurses making the sponge count, and the subsequent tortfeasor, the radiologist. As indicated under issue 2, I believe that evidence should properly be admissible as a part of the defense of the defendant doctor.

On issue 4, the majority opinion approved the giving of the following "legal cause" instruction:

> A legal cause of a death is a cause which is a substantial factor in bringing about the death.

It appears the instruction was based upon BAJI 3.76, California Jury Instructions Civil (rev. 6th ed. Supp. 1983), which states that a legal cause of injury is a cause which is a substantial factor in bringing about the injury. BAJI 3.75 is a proximate cause instruction similar to the proximate cause instruction proposed by the defendant. The Use Note following BAJI 3.76 advises that where injury may have resulted from either of two causes operating alone, the legal cause instruction should be given, not the instruction on proximate cause.

In substance, the same rationale was used by the majority opinion for concluding that the legal cause instruction was correctly given. Unfortunately, that reasoning does not apply in the present case. While it is true that there were nurses who can be classed as concurrent tortfeasors and a radiologist who can be classed as a subsequent tortfeasor, all of those other parties are no longer parties to the present action. Dr. Wright is the only defendant. Since the reasons given for use of the legal cause instruction are not present in this case, I would conclude that a proximate cause instruction properly should have been given.

Justice

21

Mr. Justice L. C. Gulbrandson and Mr. Justice John C. Harrison concur in the foregoing dissent.

_L. C. Gulbrandson_

_John Conway Harrison_
Justices