JAMES DALE BARNES,               )
                                 )
        Plaintiff/Appellant,     )
                                 )     Appeal No.
                                 )     01-A-01-9512-CV-00549
VS.                              )
                                 )     Davidson Circuit
                                 )     No. 93C-1331
MILLER MEDICAL GROUP, P.C.       )
EDGEFIELD HOSPITAL, INC.,        )
DR. DOUGLAS DORSEY, AND          )
DR. J. SHEPHERD,                 )
                                 )
        Defendants/Appellees.    )

FILED

May 3, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE WALTER C. KURTZ, JUDGE



SAM E. WALLACE, JR.
227 Second Avenue, North
Nashville, Tennessee 37201
        Attorney for Plaintiff/Appellant

DIXIE W. COOPER
EDWARD A. HADLEY
Suite 1900, NationsBank Plaza
414 Union Street
Nashville, Tennessee 37219-1782
        Attorney for Defendants/Appellees
        Miller Medical Group, P.C. and John Shepherd, M.D.



AFFIRMED AND REMANDED



                                        BEN H. CANTRELL, JUDGE



CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# O P I N I O N

The husband of a woman who suffered a fatal heart attack shortly after being discharged from a hospital emergency room filed a medical malpractice suit against the treating doctor and the medical group for which he worked. The trial court dismissed the claim against the defendant doctor because the plaintiff failed to obtain service on him. A summary judgment was subsequently granted to the defendant medical group on the ground of the plaintiff's failure to produce a qualified affidavit on the proper standard of care and on causation, as is required by the Medical Malpractice Act, Tenn. Code Ann. § 29-26-115. We affirm the trial court.

## I.

Mrs. Nina Barnes went to the emergency room of Edgefield Hospital on May 10, 1992, with complaints of upper gastric burning and chest pain. She underwent an electrocardiogram and other tests, and was examined by Dr. John Shepherd, an employee of Miller Medical Group, P.C., which provided staffing for the emergency room. Dr. Shepherd diagnosed esophagitis, gave the patient a prescription for antacids, and sent her home. Shortly afterward (the exact interval that elapsed appears not to be in the record), Mrs. Barnes suffered a heart attack and died.

On May 6, 1993, James Dale Barnes filed a lawsuit, alleging that the cause of his wife's death was the defendants' failure to correctly diagnose her underlying cardiovascular condition. Those named in the suit included Dr. Shepherd, another doctor who read the electrocardiogram, Miller Medical Group, and Edgefield Hospital. The claims against the hospital and the other doctor were eventually dismissed by the trial court and are no longer at issue.

Service of process was obtained against all the named defendants except Dr. Shepherd, who had moved in the interim, apparently first to Fort Campbell, and then to San Antonio, Texas to pursue a residency in the field of Anesthesiology. The initial summons to serve Dr. Shepherd in Davidson County was returned, "Not to be found in my county."

On July 27, 1993, process was again issued. The U.S. Marshall made an unsuccessful attempt to serve Dr. Shepherd at the Fort Campbell Military Hospital, with the summons returned "not to be found." Subsequent process issued on December 30, 1993, listed a Clarksville address for Dr. Shepherd. The process was returned with the notation "Not to be found Moved to Texas"

On September 14, 1994, more than eight months after issuance of the previous process, a summons was again issued with a request that Dr. Shepherd be served by the Texas Secretary of State. It is not clear if this summons was ever served. On October 28, 1994, Dr. Shepherd filed an Answer to the Complaint and a Motion to Dismiss. Affirmative defenses asserted in the answer included failure to obtain service, expiration of the statute of limitations, and comparative negligence. The Motion to Dismiss was granted on December 7, 1994.

## II.

Rule 3, Tenn. R. Civ. P. provides the means whereby a plaintiff may keep alive a timely filed claim after the statute of limitations has expired, despite failure to serve the defendant within the time provided by the statute. At all times relevant to the present case, the pertinent portion of that rule read as follows:[1]

> . . . If process remains unissued for 30 days or if process is not served or is not returned within 30 days from issuance,

---

[1]Rule 3 was amended on July 1, 1995, to allow the plaintiff one year from the issuance of previous process to issue new process in order to toll the statute of limitations.

> regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff either:
>
> > (1) continues the action by obtaining issuance of new process within 6 months from issuance of the previous process or, if no process issued, within 6 months from the filing of the complaint and summons, or
> >
> > (2) recommences the action within 1 year from issuance of the original process or, if no process issued, within 1 year from the filing of the original complaint and summons.

Since Mr. Barnes allowed more than eight months to elapse between the third issuance of process and the issuance of the final summons contained in this record, Dr. Shepherd contended that the operation of the statute of limitations deprived Mr. Barnes of any right of action he may have had against the treating doctor.

Mr. Barnes argues that Dr. Shepherd's absence from the state should have tolled the statute of limitations by virtue of the provisions of Tenn. Code Ann. § 28-1-111. The statute the plaintiff relies on is the current version of an 1865 act which was passed in the aftermath of the Civil War, and was designed "to meet the facts resulting from the disturbed state of society of that period in our history." *Taylor v. McGill*, 74 Tenn. 294, 300 (1880).

Under the provisions of the act, the period of the defendant's absence from the state could not be counted as part of the time limited by the statute of limitations, thus theoretically permitting the plaintiff to preserve his cause of action indefinitely, as long as the defendant was out of state. As early as the *McGill* case, supra, however, our Supreme Court limited the application of the statute to those situations where the non-residence of the defendant deprived the plaintiff of his legal remedy because of inability to obtain personal service against him. 74 Tenn. at 301.

Subsequent passage of long-arm statutes, now collected under Tenn. Code Ann. § 20-2-101 et seq., and advances in transportation and communications have increased the feasibility and ease with which personal service can be obtained on non-resident defendants, far beyond anything possible in 1880. Our Supreme Court has had several subsequent opportunities to interpret the statute in question, and has confirmed that it does not operate to toll the statute of limitations unless the defendant's absence from the state is such as to prevent service of process. See *Turcott v. Yazoo & M.V. Railroad Company.,* 101 Tenn. 102, 45 S.W. 1067 (1898); *Arrowood v. McMinn County,* 173 Tenn. 562, 121 S.W.2d 566 (1938).

There are no indications in the record that Dr. Shepherd was not amenable to being served, or that his absence from the state would have prevented service on him, if only the plaintiff had used due diligence to reach him. We therefore find that the statute of limitations was not tolled during Dr. Shepherd's absence, and that the trial court was correct in dismissing the claim against him.

**III.**

The claim against Miller Medical Group was based solely on the employment relationship between the medical group and the allegedly negligent tortfeasor, rather than upon any negligence by the group itself. On December 2, 1994, Miller Medical filed a Motion for Summary Judgment. The defendant's motion was supported by Dr. Shepherd's affidavit, which summarized the treatment received by Mrs. Barnes, and expressed the opinion that such treatment was consistent with the standard of care for patients who present the signs and symptoms that she did.

To avoid summary judgment in the face of Dr. Shepherd's affidavit, and the requirements of Tenn. Code Ann. § 29-26-115 of the Medical Malpractice Act, Mr. Barnes would have to demonstrate the existence of disputed material facts, by

producing qualified expert testimony, both that Dr. Shepherd's conduct did not comply with the standard of care, and that such conduct was the cause of Mrs. Barnes' injury. See *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993); *German v. Nichopoulos*, 577 S.W.2d 197 (Tenn. App. 1978). The trial court continued the hearing on the defendant's motion to give the plaintiff time to obtain a controverting affidavit.

On February 13, 1995, the plaintiff submitted the affidavit of Dr. Jerry Slay, who had formerly been a practitioner of emergency medicine. Dr. Slay stated that it was his opinion that the care given by Dr. Shepherd was negligent, and not in keeping with the recognized standard of care. The affidavit discussed some areas of concern, and concluded, "[i]n light of the above observations, it is my medical opinion that the negative outcome in the case of Nina Barnes could possibly have been avoided had these issues been addressed."

The Court granted summary judgment to Miller Medical on February 17, 1995, on the basis that the language in Dr. Slay's affidavit stating that "the negative outcome . . . could possibly have been avoided" did not meet the legal requirement of probability required to create a material question of fact on the issue of causation. However, the court granted Mr. Barnes an additional 45 days before making the order final, to give him the opportunity to ask Dr. Slay if he wished to amend the affidavit.

On April 3, 1995, exactly 45 days after February 17, Mr. Barnes filed a motion for a seven day extension to file the supplemental affidavit. On April 10, the amended affidavit was filed. In it, Dr. Slay stated that his use of the word "possibility" in the earlier affidavit meant ". . . the possibility was very substantial and, in fact, was a probability that death would not have resulted if proper standard of conduct (sic) had been applied."

However on April 11, 1995 the trial court issued its "Final Order of Dismissal" which stated that the 45 days had elapsed without correction of the defective affidavit. On appeal Mr. Barnes argues that it was an error for the trial court to reject Dr. Slay's initial affidavit on the basis of a failure to use words of probability or certainty, because medicine is not an exact science, and questions of causation especially do not usually lend themselves to categorical conclusions.

While the court may overlook defects in the form of the affidavit if the facts alleged in it indicate the existence of a question of material fact, we believe that something more than a statement of the possibility of causation is necessary to defeat a motion for summary judgment in a medical malpractice case. The trial court gave the plaintiff a generous allowance of additional time to correct the defect in Dr. Slay's affidavit, but the plaintiff did not make the correction until after the alloted time had elapsed. We do not believe the trial court abused its discretion in allowing its judgment to become final without consideration of the late-filed amendment.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE

MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE